RECEIVED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MAR 1 9 2008

9: 55

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| PALM HARBOR HOMES, INC. | |
| Plaintiff, | * |
| | * |
| vs. | * CASE NO.: 1:08CV196 |
| | * |
| MICHAEL AND JENNIFER WALTERS, | * |
| CHESTER DRISKELL, | * |
| | * |
| Defendants. | * |

## NOTICE OF REMOVAL

COME NOW the Defendants, Michael and Jennifer Walters and Chester Driskell, through the undersigned counsel, and file this Notice of Removal of this case pending in the Circuit Court of Coffee County, Alabama, CV-2008-900007 to the United States District Court, Middle District of Alabama, Southern Division, pursuant to 28 U.S.C. §§ 1332(d)(2) and 1441(a), and in support thereof, show unto this Court as follows:

1. An action was commenced on or about February 15, 2008 against the Defendants in the Circuit Court of Coffee County, Alabama, entitled *PALM HARBOR HOMES, INC. vs. MICHAEL AND JENNIFER WALTERS, CHESTER DRISKELL*, Case Number CV-2008-900007. Plaintiff made no demand for a jury. Defendants are Michael and Jennifer Walters and Chester Driskell who purchased manufactured homes from Plaintiff. Plaintiff, Palm Harbor Homes, Inc., is a producer of manufactured homes. The case involves defects in the manufactured homes purchased by Defendants. Plaintiff effected service of the Complaint via hand delivery on February 18, 2008 and the summons was accepted by Defendants' counsel on behalf of Defendants on the same day. Less than thirty (30) days have expired since service of summons upon Defendants.

1

2.      Defendants have filed no pleadings, motions, or appearances in state court. The documents attached hereto as Exhibit A constitute all of the process, pleadings, and orders served upon Defendants in this action. These Defendants concur in the filing of this notice of removal.

3.      This action is one in which the United States District Courts are given original jurisdiction under the Class Action Fairness Act ("CAFA") codified at 28 U.S.C. § 1332(d)(2). Therefore, this action is removable based on this special removal statute 28 U.S.C. § 1332(d)(2) and pursuant to 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1446(b), this notice is filed in the United States District Court for the Middle District of Alabama, Southern Division within the time allowed by law for the removal of civil actions to the United States District Court for the district and division of the place where the action is pending.

4.      The amount in controversy exceeds $5,000,000. The Eleventh Circuit has stated "'[w]hen a party seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'" *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)(quoting *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)). Judge Fuller of this Court has agreed and stated "[i]n declaratory actions, the amount in controversy is measured by the value of 'the object of the litigation.'" *Kennedy v. Fleetwood Enterprises, Inc.*, 2007 WL 4287374, *1 (M.D.Ala. 2007)(quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977)). In a motion to compel arbitration, "the underlying claim in arbitration is the correct measure of the amount in dispute because the 'petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award.'" *Id.* at *2 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)). Likewise, the correct measure of the

amount in dispute in this case is the underlying claim because it too is but one step in reaching the ultimate goal of a judgment affirming an arbitration award.

5.    The underlying dispute in this action arose out of defects to manufactured homes purchased by Defendants and manufactured by Plaintiff. Defendants agreed to arbitration at the purchase of their homes, therefore, Defendants stated their causes of action in arbitration on or about December 22, 2006 and amended the complaint on or about February 20, 2007. (*See* Exhibits B & C). Defendants have asserted class action allegations in their Arbitration Complaint. In arbitration, the initial determination the arbitrator had to make was whether the arbitration provisions agreed to by Defendants and Plaintiff would allow Defendants to proceed as a class. The arbitrator ultimately decided that the arbitration provisions at issue did not prohibit Defendants from proceeding in arbitration as a class and issued a Clause Construction Award ordering such. Plaintiff filed a Declaratory Action in the Circuit Court of Coffee County, Alabama seeking to vacate the Clause Construction Award and compel Defendants to arbitration individually, instead of as a class.

6.    Had it not been for the arbitration provisions, Defendants would have filed their class action complaint in this Court. This Court would have had original jurisdiction over the claims based on CAFA or diversity. There is no doubt this Court would have jurisdiction over the underlying action had there not been arbitration provisions which kept them out of this Court.

7.    Defendants seek compensatory damages in their Arbitration Complaint, but do not specify the amount of damages. (*See* Exhibit C). Defendants did contend in the Complaint that Michael and Jennifer Walters purchased their home for $53,227.50. (*See* para. 31 of Exhibit C, the Arbitration Complaint). Defendants also contended Chester Driskell purchased his home for $60,000. (*See* para. 37 of Exhibit C, the Arbitration Complaint). Defendants also contended

their homes are now worthless. (*See* para. 4 of Exhibit C, the Arbitration Complaint). The arbitration was "brought by and on behalf of thousands of homeowners. . . ." (*See* para. 1 of Exhibit C, the Arbitration Complaint).

8.      Defendants contend the class is made up of thousands of homeowners. If there were only 1,000 homeowners and they each purchased their home for at least $50,000, the total amount in dispute would be $50,000,000. Defendants contend the actual class is more than 1,000 and some homeowners purchased their home for more than $50,000. Therefore, the amount in controversy requirement of $5,000,000 is met.

9.      Furthermore, Defendants also seek damages for "mental anguish, . . . emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, [and] inconvenience." (*See* para. 25 of Exhibit C, the Arbitration Complaint). Judge Fuller of this Court pointed out that in *Southern Energy Homes, Inc. v. Washington*, a manufactured home producer was sued for many of the same claims that Defendants allege in their case against Plaintiff. 774 So.2d 505 (Ala. 2000). A compensatory damages award in that case of $375,000 was upheld by the Alabama Supreme Court and a "substantial portion" of that amount was for mental anguish. *Id.* at 518-19. This amount must be multiplied by the thousands of homeowners in the class.

10.     Moreover, Defendants seek punitive damages. Judge Fuller also has pointed out that in *Horton Homes, Inc. v. Brooks*, a manufactured home producer was sued for many of the same claims that Defendants allege in their case against Plaintiff. 832 So.2d 44 (Ala. 2001). Initially, the plaintiffs were awarded $600,000 in punitive damages, which was reduced by the Alabama Supreme Court to $150,000. *Id.* at 54, 59. This amount must be multiplied by the thousands of homeowners in the class.

4

11.     Based on the number of potential class members and the prices of the homes, plus mental anguish and punitive damages, the amount in controversy far exceeds $5,000,000, as required by CAFA.

12.     Had it not been for the arbitration provisions, Defendants would have filed their class action complaint in this court.  28 U.S.C. § 1332(d)(2) states the following:

> (2) The district courts **shall have original jurisdiction** of any civil action in which the matter in controversy **exceeds the sum or value of $5,000,000**, exclusive of interest and costs, and is a **class action** in which—
>
> **(A) any member of a class of plaintiffs is a citizen of a State different from any defendant. . . .**

(Emphasis added).

13.     This Court clearly has original jurisdiction over this action because the amount in controversy is in excess of $5,000,000 and all potential members of the class are from a different state than that of Plaintiff.  Potential class members are citizens of the State of Alabama.  Upon information and belief, Plaintiff is a business incorporated in the State of Florida, with its principal place of business in Florida.  (*See* paragraph 1 of Exhibit A, the Complaint).

14.     Defendants recognize there are exceptions to CAFA that prevent federal courts from exercising jurisdiction over certain actions that might otherwise be heard by a federal court.  However, none are applicable in this case.  The "interest of justice" exception stated in 28 U.S.C. § 1332(d)(3),[1] the "local controversy" exception stated in 28 U.S.C. § 1332(d)(4)(A),[2] and the

---

[1] 28 U.S.C. § 1332(d)(3) states in pertinent part "[a] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which . . . **the primary defendants are citizens of the State in which the action was originally filed. . . .**"  (Emphasis added).
[2] 28 U.S.C. § 1332(d)(4)(A) states in pertinent part "[a] district court shall decline to exercise jurisdiction under paragraph (2) . . . over a class action in which . . . at least 1 defendant is a defendant . . . **who is a citizen of the State in which the action was originally filed. . . .**"  (Emphasis added).

"home state controversy" exception stated in 28 U.S.C. § 1332(d)(4)(B)[3] are all inapplicable for the same reason. That reason is that Plaintiff is not a citizen of the State in which the action would have been originally filed, Alabama. Since no exceptions under CAFA apply, Defendants contend this Court's exercise of jurisdiction over this action is mandatory.

15.    As mentioned above, had there not been arbitration provisions in this case, Defendants would have originally filed their action in this Court and this Court would have had original jurisdiction based upon diversity or CAFA. As Judge Fuller has stated, "[a] civil case filed in state court may be removed by the defendant to federal court if the case could have been brought in federal court originally." *Kennedy v. Fleetwood Enterprises, Inc.*, 2007 WL 4287374, at *1. It is indisputable that Defendants could have and would have originally brought this action in this Court but for the arbitration provisions.

16.    The Eleventh Circuit has studied CAFA and stated "Congress expressly intended CAFA to expand federal diversity jurisdiction over class actions." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1197 (11th Cir. 2007).

17.    A true copy of this Notice of Removal is filed with the Clerk of the Circuit Court of Coffee County, Alabama, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants pray that this Court accept jurisdiction of the above action.

---

[3] 28 U.S.C. § 1332(d)(4)(B) states in pertinent part "[a] district court shall decline to exercise jurisdiction under paragraph (2) . . . over a class action in which . . . **the primary defendants, are citizens of the State in which the action was originally filed.** (Emphasis added).

C. Lance Gould (ASB-0913-G66C)
Attorneys for Defendants
Michael and Jennifer Walters
and Chester Driskell

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343
(334) 954-7555 (fax)

7

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon all parties listed below by placing a copy of same in the United States Mail, first class, postage prepaid on this the 19th day of March, 2008.

Winston C. Edwards
David C. Hilyer
Craddock, Reneker & Davis, LLP
4142 Carmichael Road, Suite C
Montgomery, Alabama 36106

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward A. Hosp
J. Ethan McDaniel
1901 6th Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203
(205) 254-1000 (Telephone)
(205) 254-1999

OF COUNSEL

ELECTRONICALLY FILED
2/15/2008 2:58 PM
CV-2008-900007.00
CIRCUIT COURT OF
COFFEE COUNTY, ALABAMA
MICKEY COUNTS, CLERK

## IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA
### ELBA DIVISION

| | |
|---|---|
| PALM HARBOR HOMES, INC. | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| VS. | )     CASE NO._____ |
| | ) |
| MICHAEL AND JENNIFER WALTERS, | ) |
| CHESTER DRISKELL, | ) |
| | ) |
| **DEFENDANTS.** | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND
## FOR ORDER COMPELLING ARBITRATION

COMES NOW Plaintiff Palm Harbor Homes, Inc. ("Palm Harbor") and hereby states its complaint against Defendants Michael and Jennifer Walters and Chester Driskell as follows:

### PARTIES

1.    Plaintiff Palm Harbor is a business incorporated in the State of Florida, with its principal place of business in Florida.

2.    Defendants Michael and Jennifer Walters ("Walters") are, upon information and belief, residents of Pike County, Alabama.

3.    Defendant Chester Driskell ("Driskell") is, upon information and belief, a resident of Coffee County, Alabama.

4.    Defendants Driskell and the Walters are collectively referred to as "named Claimants."

**EXHIBIT**

**A**

01601555.2

1

## JURISDICTION

4.    This Court has jurisdiction of this matter pursuant to Ala. Code §6-6-222, et seq. and 9 U.S.C. § 1, et seq. (FAA).[1]

5.    The Declaratory Judgment Act, Alabama Code § 6-6-222 (2005), provides in pertinent part, "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  Ala. Code § 6-6-222 (2005).   Therefore, a declaratory judgment action is the appropriate mechanism through which Palm Harbor can assert and enforce its contractual and legal rights in this context.

6.    Furthermore, the Alabama Supreme Court has specifically recognized declaratory judgment actions as acceptable means for obtaining an order compelling arbitration in accordance with the terms of an arbitration agreement. *Unum Life Ins. Co. of America v. Wright*, 897 So. 2d 1059, 1074 (Ala. 2004).

7.    The amounts at issue in this matter clearly exceed the minimum amounts necessary for the exercise of this Honorable Court's jurisdiction.

## VENUE

8.    Palm Harbor is a foreign corporation authorized to transact business in Alabama and transacting business Alabama.

9.    Upon information and belief, Defendant Driskell resides in his manufactured home which is located in Coffee County, Alabama, and the Walters reside in their manufactured home which is located in Pike County, Alabama.

---

[1] This Court also has jurisdiction of this matter pursuant to Ala. Code. §6-6-15.

2

10.     Therefore, pursuant to Ala. Code §6-3-2, venue is proper in Coffee County, Alabama as to Defendant Driskell.  Pursuant to Ala. R. Civ. P. 82(c), venue is proper as to the Walters in Coffee County because it is proper as to Driskell.

## FACTUAL BACKGROUND

11.     On or about December 22, 2006, named Claimants commenced an arbitration proceeding against Palm Harbor alleging class action status.  *See* Arbitration Demand, attached as Exhibit A.  Named Claimants' allegations concern purported defects in manufactured homes that they purchased.

12.     Named Claimants asserted claims from breach of express warranty, breach of implied warranty of habitability, negligence, wanton construction, unjust enrichment, and fraudulent concealment and suppression.

13.     It is undisputed that the transaction at issue was and is subject to an arbitration agreement and that the agreement provided that arbitration shall be "according to the applicable rules of the American Arbitration Association."

14.     In 2003, the American Arbitration Association ("AAA") adopted Supplemental Rules for Class Arbitration.  The Supplementary Rules, specifically Rule 3,  provide for an initial "Construction of the Arbitration Clause".  As stated in Rule 3:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days <u>to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award</u>.  Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the

> arbitration on the basis state in the Clause Construction award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

Rule 3, AAA Supp. R. for Class Arbitrations.

15.    Pursuant to United States Supreme Court precedent, the construction of an arbitration agreement for the purpose of deciding whether an arbitration may proceed on a class basis is an issue that must be decided as a matter of state law - in this case, the law of Alabama. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003).

16.    Alabama law expressly provides that arbitration as a class is only permitted when "the language in the arbitration agreement specifically provides for class-wide arbitration," and "to require class-wide arbitration" where the clause is silent on the issue, "would alter the agreements of the parties whose arbitration agreements do not provide for class-wide arbitration," *Med Center Cars, Inc. v. Smith*, 727 So.2d 20 (Ala. 1998); *Leonard v. Terminix Int'l Co*. LLP, 854 So.2d 529, n. 2 (Ala. 2002) ("class-wide arbitration is not permitted absent an agreement permitting disposition on such a basis").

17.    The arbitration provision at issue in the instant matter undisputedly does not "specifically provide for class-wide arbitration" and is "silent" concerning the availability of class arbitration.

18.    Despite the fact that the arbitration provision at issue undisputedly does not "specifically provide for class wide arbitration" and is "silent" on that subject, the AAA Arbitrator presiding over the underlying arbitration issued a Clause Construction Award finding that the contract at issue permitted this arbitration to proceed on behalf of a class. *See* Clause Construction Award, attached as Exhibit B.

19.    This ruling is in direct contradiction with express Alabama law and manifestly disregards that law.

20.    The Arbitrator in this action expressly recognized the right under the AAA Rules for either party to seek judicial review of her Clause Construction Award in the January 17, 2008 Order.  As stated by the arbitrator:

> In accordance with Rule 3 of the AAA's Supplementary Rules for Class Arbitrations, I retain jurisdiction and order that all proceedings herein be stayed for a period of 30 days from the date of this Partial Final Award so that any party may seek to have this decision confirmed or vacated in a court of competent jurisdiction.

Clause Construction Award, p. 7.

## COUNT ONE

21.    Pursuant to Ala. Code § 6-6-222, et seq., an actual, bona fide controversy of a justiciable nature exists between the parties, the parties hereto can fairly and adequately present the issues, and Palm Harbor seeks a declaration of the parties' respective contractual and legal rights, status, and obligations to one another.

22.    Palm Harbor also seeks an order, pursuant to 9 U.S.C. § 4, compelling the arbitration to proceed in the manner provided for in the arbitration agreement.

23.    Palm Harbor also seeks an order, pursuant to 9 U.S.C. § 10(a)(4), Alabama statutory law and Alabama common law, vacating the Clause Construction Award because the Arbitrator exceeded her authority, ignored applicable Alabama law, manifestly disregarded Alabama law, acted arbitrarily and capriciously, has violated Alabama public policy and improperly reformed the contract at issue.[2]

---

[2] The Order should also be vacated pursuant to Ala. Code § 6-6-15.

WHEREFORE, Plaintiff Palm Harbor respectfully request that this Court enter an Order vacating the Arbitrator's Clause Construction Award and directing the Arbitrator to enter a new Clause Construction Award precluding arbitration of the disputes in this matter as a class, and directing Defendants Driskell and the Walters to proceed to separate individual arbitrations with any and all disputes under their warranty agreements.

Respectfully submitted,

s/Winston W. Edwards
Winston W. Edwards, Esq.
David C. Hilyer, Esq.
Attorneys for Plaintiff

CRADDOCK DAVIS & KRAUSE, LLP
4142 Carmichael Road, Suite C
Montgomery, AL 36106-2802

/s/ Edward A. Hosp
Lee E. Bains, Jr. (BAI005)
Thomas W. Thagard, III (THA006)
Edward A. Hosp
J. Ethan McDaniel (MCD065)
Attorneys for Plaintiff

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 6th Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000 (Telephone)
(205) 254-1999 (Facsimile)

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

| Michael Walters | Jennifer Walters | Chester Driskell |
|---|---|---|
| 6007 Alabama Hwy 93 | 6007 Alabama Hwy 93 | 3334 County Rd 201 |
| Banks, AL 36005 | Banks, AL 36005 | Brundidge, AL 36079 |

01601555.2

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>19-CV-2008-900007.00 |
| --- | --- | --- |

### IN THE CIVIL COURT OF COFFEE, ALABAMA
### PALM HARBOR HOMES, INC. v. MICHAEL WALTERS ET AL

**NOTICE TO**  MICHAEL WALTERS, 6007 ALABAMA HIGHWAY 93, BANKS AL, 36005

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY EDWARD HOSP

WHOSE ADDRESS IS 1901 6TH AVENUE NORTH 2400 AMSOUTH-HARBERT PLAZA, BIRMINGHAM AL, 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of  PALM HARBOR HOMES, INC.
   pursuant to the Alabama Rules of the Civil Procedure

| 2/15/2008 2:58:28 PM | /s MICKEY COUNTS | |
| --- | --- | --- |
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested    /s EDWARD HOSP

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____                    _____

Date                                Server's Signature

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>19-CV-2008-900007.00 |
|---|---|---|

### IN THE CIVIL COURT OF COFFEE, ALABAMA
### PALM HARBOR HOMES, INC. v. MICHAEL WALTERS ET AL

**NOTICE TO**   JENNIFER WALTERS, 6007 ALABAMA HIGHWAY 93, BANKS AL, 36005

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY EDWARD HOSP

WHOSE ADDRESS IS 1901 6TH AVENUE NORTH 2400 AMSOUTH-HARBERT PLAZA, BIRMINGHAM AL, 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   PALM HARBOR HOMES, INC.
   pursuant to the Alabama Rules of the Civil Procedure

| 2/15/2008 2:58:28 PM | /s MICKEY COUNTS | |
|---|---|---|
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested   /s EDWARD HOSP

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____                _____
Date                                     Server's Signature

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>19-CV-2008-900007.00 |
| --- | --- | --- |

### IN THE CIVIL COURT OF COFFEE, ALABAMA
### PALM HARBOR HOMES, INC. v. MICHAEL WALTERS ET AL

**NOTICE TO**    CHESTER DRISKELL, 3334 COUNTY ROAD 201, BRUNDIDGE AL, 36079

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY EDWARD HOSP

WHOSE ADDRESS IS 1901 6TH AVENUE NORTH 2400 AMSOUTH-HARBERT PLAZA, BIRMINGHAM AL, 35203

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    PALM HARBOR HOMES, INC.
   pursuant to the Alabama Rules of the Civil Procedure

| 2/15/2008 2:58:28 PM | /S MICKEY COUNTS | |
| --- | --- | --- |
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested    /s EDWARD HOSP

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____                _____
Date                Server's Signature

ELECTRONICALLY FILED
2/18/2008 11:21 AM
CV-2008-900007.00
CIRCUIT COURT OF
COFFEE COUNTY, ALABAMA
MICKEY COUNTS, CLERK

## IN THE CIRCUIT COURT OF COFFEE COUNTY, ALABAMA
### ELBA DIVISION

| | | |
|---|---|---|
| **PALM HARBOR HOMES, INC.** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO. CV-08-900007** |
| | ) | |
| **MICHAEL AND JENNIFER WALTERS,** | ) | |
| **CHESTER DRISKELL,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

### NOTICE OF APPEARANCE

Comes now Maynard, Cooper & Gale, P.C., by and through the undersigned attorney

Thomas W. Thagard III and hereby notifies the Court of his appearance as counsel of record on

behalf of defendants Palm Harbor Homes, Inc.


_s/Thomas W. Thagard III_____
Thomas Werth Thagard III

Attorney for Defendant, Palm Harbor Homes, Inc.


OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
Attorneys at Law
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000


01604277.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record via Alafile on this the 18th day of February, 2008:

C. Lance Gould
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 416
Montgomery, AL 36103

<u>s/Thomas W. Thagard III</u>
Of Counsel

01604277.1

**ARBITRATION**

| | |
|---|---|
| MICHAEL WALTERS AND JENNIFER WALTERS, CHESTER DRISKELL on behalf of themselves and a class of similarly situated individuals<br><br>            Plaintiffs,<br><br>        v.<br><br>PALM HARBOR HOMES, INC.; and Fictitious Defendants "A", "B", and "C", whether singular or plural, are those other persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to cause the injuries and damages to the Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time, but will be substituted by amendment when ascertained,<br><br>            Defendants. | No. |

Plaintiffs allege upon personal knowledge as to their own acts, and upon information and belief (based on the investigation of counsel) as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, on behalf of themselves and a class of similarly situated individuals, as follows.

## I.    NATURE OF THE ACTION

1.    This litigation is brought by and on behalf of thousands of homeowners who unwittingly purchased manufactured homes built by Defendants that were fundamentally defective for the jurisdictions in which they lived. The walls of their homes are literally rotting away as a result of a pervasive defect in their construction that Defendants have known about but failed to correct.

2.    Defendants have known for years that their primary method of constructing the walls of their manufactured homes was defective when those homes were sold for placement in the humid climates of Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina,



Texas, and Louisiana.    Specifically, Defendants have known that in the climates that predominate in those states, the location of the vapor barrier (or "vapor retarder") in the majority of Defendants' manufactured homes allows moisture to accumulate and remain in the walls of those homes, thereby creating a situation in which the walls deteriorate and become host to destructive and dangerous molds and fungi.

3.    Defendants knew of this problem, knew how to fix it, and had viable methods available to them for fixing it, yet they continued to promote and sell defective manufactured homes throughout the states in the Gulf Coast region, knowing that the deterioration of these homes was inevitable.    However, despite this knowledge, Defendants never disclosed the problem to the homeowners.

4.    Plaintiffs, and homeowners like them, now own or are heavily mortgaged into worthless homes that are crumbling around them.

## II.    PARTIES

5.    Plaintiffs Michael Walters and Jennifer Walters are over the age of nineteen (19) and are residents of Pike County, Alabama.    They are collectively referred to in this Complaint as the Walters.

6.    Plaintiff Chester Driskell is over the age of nineteen (19) and is a resident of Pike County, Alabama.

7.    Defendant Palm Harbor Homes, Inc. ("Palm Harbor Homes") upon information and belief is a Texas corporation, who does business by agent in Alabama.

8.    Fictitious Defendants "A," "B," and "C," whether singular or plural, are those other persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to cause the injuries and damages to Plaintiffs, all of whose true and correct names are unknown to Plaintiffs at this time, but will be substituted by amendment when ascertained.

## III.    BACKGROUND FACTS

### A.    General Allegations

9.    The Federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401, *et. seq.*, went into effect on June 15, 1976, and is commonly referred to as the "HUD Code." In addition, there exists the Manufactured Home Construction and Safety Standards, 24 C.F.R. § 3280, *et. seq.*, (the "Standards") and the Manufactured Home Procedural and Enforcement Regulations, 24 C.F.R. § 3282, *et. seq.*, (the "Regulations.")

10.    The Standards mandate that "[a]ll construction methods shall be in conformance with accepted engineering practices to insure durable, livable and safe housing and shall demonstrate acceptable workmanship reflecting journeyman quality of work of the various trades." 24 C.F.R 3280.303(b).

11.    Defendants have known since at least the early 1990s that homes that it has manufactured and sold in the states of Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, Texas, and Louisiana are defectively designed for that region.

12.    The mobile homes designed and manufactured by Defendants and purchased by Plaintiffs and the Class have a defective design and construction of exterior walls in violation of the HUD Manufactured Home Construction and Safety Standards. Specifically, the defective mobile homes use a design that incorporates vapor barriers on the "living side" of the wall structures and exterior wall cavities that are ventilated to the outside air for use in a Gulf Coast region state that is subject to hot and humid climactic conditions. The vapor barrier on the "living side" of the wall structure is vinyl-coated gypsum wallboard (sheetrock) with a permeability rating of not greater than 1 perm. This design and manufacture aspect does not comply with accepted engineering practices to insure durable, livable, and safe housing as set forth in HUD standards Title 24 of the Code of Federal Regulations § 3280.303(b). This defective design and construction of the exterior walls of homes for use in the Gulf Coast region has led to or will lead to excessive accumulation of vapor condensation and a contiguous moisture problem throughout the exterior wall structures of the mobile homes utilizing this

design and material in manufacture. The excessive moisture accumulation within the walls has led or will lead to premature deterioration of wall materials, warping or weakening of wall materials, development of "soft walls", and to the growth of molds and/or fungi that are potentially harmful to the occupants. Because this predictable phenomenon and resulting damage occurs in the Gulf Coast states, people working in the manufactured housing industry commonly refer to this condition as "Gulf Coast Syndrome."

13.    Contrary to the mandate to build homes using "acceptable engineering practices to insure durable, livable and safe housing," the placement of a vapor barrier on the living side of the homes in the regions described herein is contrary to acceptable and fundamental engineering practices.

14.    The manufactured homes designed and manufactured by Defendants, including the manufactured homes purchased by Plaintiffs and the Class, have an improper design and construction of the walls in violation of the Department of Housing and Urban Development's ("HUD's") Manufactured Home Construction and Safety Standards. The defect existed at the time of sale and Plaintiffs and the proposed Class were provided with a written manufacturer warranty that expressly warranted that the home was free from defect.

15.    Under applicable regulations, it is the responsibility of the manufacturer to choose from one of several options for the construction of a home, taking into consideration, among other things, the geographic location in which the home will be placed. To that end, the HUD Code has provided two options for home construction under 24 C.F.R. § 3280.504(b) which have never required the placement of a vapor retarder on the living side of the home. In addition, the HUD Code provides for any innovations and/or alternatives in construction for "new designs or techniques not in compliance with the Standards ... in cases ... [w]here such construction would provide performance that is equivalent or superior to that required by the Standards; and ... where compliance with the Standards would be unreasonable because of the circumstances of the particular case."

- 4 -

16.    Despite the fact that the HUD Code, the Standards, and the Regulations have never required the use of a vapor barrier on the living side of the walls in these regions, on or about March 30, 2000, the Director, Manufactured Housing and Standards Division, Office of Consumer and Regulatory Affairs, Room 9156, Department of Housing and Urban Development (hereinafter, "HUD" or "the Department") published a proposed waiver to 24 C.F.R. 3280.504 of the Manufactured Home Construction and Safety Standards (hereinafter, "the Standards") on March 30, 2000 (65 Fed. Reg. 17110). This proposed waiver applied to the first of the options in 24 USC 3280.504(b) (the only option requiring the vapor barrier /retarder be on the living side of the walls) and allowed the vapor barrier / retarder to be moved from the living side walls of the home to the outside of the home. Thus, four express options were available to the manufacturer before the "proposed waiver" was implemented in March 2000. The waiver now creates yet another option from which the manufacturer may choose to meet "their responsibilities to use construction methods that result in 'durable, livable, and safe housing' as required by 24 CFR 3280.303(b) of the Standards."

17.    The proposed waiver was issued in response to information received from manufacturers and certain State Administrative Agencies ("SAAs") in southeastern States concerning the continuing increases in the number and severity of consumer complaints caused primarily by moisture build-up and condensation in homes located in the south. At that time, § 3280.504 of the Standards did not distinguish among climates for requirements for condensation control and installation of vapor barriers. Thus, for example, the Standards did not separately address homes placed in humid and fringe environments or climates, which are predominantly located in the southeastern part of the United States. In these climates, it was determined that it may be beneficial to prevent the outside, moisture-laden air from entering through the warm (exterior) side of the home's exterior wall and condensing and collecting on the cold (living space or interior) side of the wall assembly. One means of preventing moisture from entering the exterior wall cavity from the outside would be to install a vapor retarder on the

- 5 -

warm or exterior side of the wall instead of on the interior or living space side of the exterior wall.

18.    The interior surface of the exterior wall should also be constructed of a permeable material.  This would permit any moisture-laden air that may have entered the wall cavity through a discontinuity in the exterior vapor retarder to be dissipated through the interior permeable material.  In such cases, use of vapor retarder paints, vinyl-covered gypsum wallboard, or other impermeable materials or finishes on the interior side of exterior walls could be detrimental, because they would trap moisture within the wall.

19.    HUD in fact issued a waiver that applied to the first of the alternatives available under § 3280.504(b), the then current condensation control and vapor barrier installation requirements for exterior walls in humid and fringe climates.  Specifically, this waiver allowed manufacturers of homes for humid and fringe climates to install the vapor retarder on the exterior side, rather than the interior or living space side, of the exterior wall, provided: (1) The exterior side of the exterior wall is constructed with a vapor retarder or exterior covering and sheathing that has a permeance not greater than 1.0 perm; and (2) the interior finish and interior wall panels are designed with a 5 perm or higher rating.  The waiver also required manufacturers to add a statement and a map to the data plate indicating that the home is only suitable for installation in humid and fringe climates (the map designated the acceptable locations for which the waiver is applicable).

20.    The waiver that was urged by many manufacturers in the industry and approved by HUD stated:

> **§ 3280.504  Condensation control and installation of vapor retarders:**
>
> \*\*\*
>
> (4) Homes manufactured to be sited in "humid climates" or "fringe climates" as shown on the Humid and Fringe Climate Map in this paragraph shall be permitted to have a vapor retarder specified in paragraph (b)(1) of this section installed on the exterior side of the wall insulation or be constructed with an external covering and sheathing with a combined permeance of not greater than 1.0 perm,

provided the interior finish and interior wall panel materials have a combined permeance of not less than 5.0 perm.

21.    The Humid and Fringe Climate Map stated that "following areas of local governments (counties or similar areas, unless otherwise specified), listed by State are deemed to be within the humid and fringe climate areas shown on the Humid and Fringe Climate Map in paragraph (b)(4) of this section, and the vapor retarder specified in paragraph (b)(4) of this section may be applied to homes built to be sited within these jurisdictions":

**Alabama:** Baldwin, Barbour, Bullock, Bulter, Chootaw, Clarke, Coffee, Conecuh, Covington, Crenshaw, Dale, Escambia, Geneva, Henry, Houston, Lowndes, Marengo, Mobile, Monroe, Montgomery, Pike, Washington, Wilcox.
**Florida:** All counties and locations within the State of Florida.
**Georgia:** Appling, Atkinson, Bacon, Baker, Ben Hill, Berrien, Brantley, Brooks, Bryan, Calhoun, Camden, Charlton, Chatham, Clay, Clinch, Coffee, Colquitt, Cook, Crisp, Decatur, Dougherty, Early, Echols, Effingham, Evans, Glynn, Wayne, Grady, Irwin, Jeff Davis, Lanier, Lee, Liberty, Long, Lowndes, McIntosh, Miller, Mitchell, Pierce, Quitman, Randolph, Seminole, Tattnall, Terrell, Thomas, Tift, Turner, Ware, Worth.
**Louisiana:** All counties and locations within the State of Louisiana.
**Mississippi:**
Adams, Amite, Clairbourne, Clarke, Copiah, Covington, Forrest, Franklin, George, Greene, Hancock, Harrison, Hinds, Issaquena, Jackson, Jasper, Jefferson, Jefferson Davis, Jones, Lamar, Lawrence, Lincoln, Pearl River, Perry, Pike, Rankin, Simpson, Smith, Stone, Walthall, Warren, Wayne, Wilkinson.
**North Carolina:** Brunswick, Carteret, Columbus, New Hanover, Onslow, Pender.
**South Carolina:**
Jasper, Beaufort, Colleton, Dorchester, Charleston, Berkeley, Georgetown, Horry.
**Texas** Anderson, Angelina, Aransas, Atacosa, Austin, Bastrop, Bee, Bexar, Brazoria, Brazos, Brooks, Burleson, Caldwell, Calhoun, Cameron, Camp, Cass, Chambers, Cherokee, Colorado, Comal, De Witt, Dimmit, Duval, Falls, Fayette, Fort Bend, Franklin, Freestone, Frio, Gavelston, Goliad, Gonzales, Gregg, Grimes, Guadalupe, Hardin, Harris, Harrison, Hays, Henderson, Hidalgo, Hopkins, Houston, Jackson, Jasper, Jefferson, Jim Hogg, Jim Wells, Karnes, Kaufman, Kennedy, Kinney, Kleberg, La Salle, Lavaca, Lee, Leon, Liberty, Limestone, Live Oak, Madison, Marion, Matagorda, Maverick, McMullen, Medina, Milam, Montgomery, Morris, Nacogdoches, Navarro, Newton, Nueces, Orange, Panola, Polk, Rains, Refugion, Robertson, Rusk, Sabine, San Augustine, San Jacinto, San Patricio, Shelby, Smith, Starr, Titus, Travis, Trinity, Tyler, Upshur, Uvalde, Val Verde, Van Zandt, Victoria, Walker, Waller, Washington, Webb, Wharton, Willacy, Williamson, Wilson, Wood, Zapata, Zavala.

These respective Counties shall hereinafter be referred to as the "Gulf Coast Region."

22.    As the acting Director of Product Engineering for Fleetwood Homes stated in commenting to HUD on the proposed waiver:

[t]o be able to put the vapor barrier on the exterior side (warm side) of the wall in hot, humid climates is very necessary to properly handle potential moisture problems... [w]ithout these

- 7 -

exceptions the vapor barrier will remain on the inside in the hot, humid climate and moisture will be trapped in the home."

(Comments by William Farish, P.E. in a letter dated January 17, 2005, to the HUD).

23.     Despite lobbying for and obtaining the waiver, Defendants failed to take advantage of the waiver HUD agreed was required. Defendants disingenuously allege that it is impracticable to comply with the waiver. Again, as alleged, even prior to the waiver, there were other options available which did not require a vapor retarder on the living side of the walls, and an unlimited alternative construction provision that allowed manufacturers to meet the federal mandate of safe and durable housing through innovative construction designs and methods. Upon information and belief, Defendants chose to ignore these other options because the location of a vapor retarder on the living side of the walls was beneficial in the majority of the locations in which Defendants sold their homes, and changing the design for a minority of homebuyers would impact Defendants' profits. The result was that Defendants sold a product in the Gulf Coast Region that is defective for that geographic region. Regardless, Defendants chose to sell homes to consumers in the Gulf Coast Region without informing them of this known defect and thus chose profit over conscience.

24.     Any and all complaints to Defendants have resulted in inadequate relief. Despite a reasonable opportunity to correct its wrongs, including repeated complaints by countless individuals, Defendants have only occasionally offered to replace a particular home's gypsum wallboard. This does not remedy the cause of the problem as the new gypsum wallboard deteriorates in the same manner as the replaced gypsum wallboard. Defendants never inform the consumers of the known defect and fail to offer a full refund of the purchase price.

25.     Defendants made a written express warranty to the Plaintiffs and the members of the proposed Class. Defendants further warranted that any defects in the materials or workmanship in the home, which they were given notice of within the warranty period, would be repaired or remedied at no cost to the Plaintiffs.

- 8 -

26.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class have been proximately damaged as follows: the defects in the manufactured homes have substantially and severely impaired their use; the homes are of decreased or lesser value than represented when purchased; Plaintiffs and the Class have suffered mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience; and Plaintiffs and the Class have been subject to toxic mold resulting from the defects.

27.    At all times material hereto, Plaintiffs and the Class depended on Defendants to advise them as to quality and design of the manufactured home. Defendants had superior knowledge and bargaining power over Plaintiffs and the Class.

28.    The conduct by Defendants was intentional, gross, wanton, malicious and/or oppressive.

29.    The manufactured homes that Defendants sold to Plaintiffs and the Class were dangerous products when they were manufactured and provided for sale in the Gulf Coast Region. As Defendants knew, the homes created a substantial risk of excessive moisture and therefore created an extreme risk of mold growth and structural damage. This in turn created an unreasonable and serious risk of personal injury or death to Plaintiffs, Class members, other residents of the homes, and visitors to those homes.

30.    Defendants warranted to all Plaintiffs and Class members that the manufactured homes were free from defects in materials and/or workmanship, and Plaintiffs and the Class had a reasonable expectation that each manufactured home would have proper construction appropriate for the region in which the manufactured homes were sold. Defendants also promised expressly or as a matter of law impliedly to comply with all applicable building codes, including the HUD Code, Standards, and Regulations.

31.    The presence of the defect, which was negligently or fraudulently concealed by by the Defendants, was material to the transaction because no consumer in the Gulf Coast

Region would purchase a manufactured home if told that the manufactured home was defective for use with the Gulf Coast Region.

**B.    Specific and Representative Allegations Regarding the Walters**

32.    Defendants manufactured a manufactured home, which the Walters purchased on or about June 3, 2003. The purchase price of the home was $53,227.50.

33.    Defendants made a written express warranty to the Walters that was identical or substantially the same as that provided to other Plaintiffs and the Class. Defendants further warranted that any defects in the materials or workmanship in the home, which they were given notice of within the warranty period, would be repaired or remedied at no cost to the Walters.

34.    The manufactured home manufactured by Defendant Palm Harbor Homes failed to perform, failed to serve as a suitable place of residence, and failed in its intended purpose.

35.    Subsequent to the failure of the manufactured home and notice by the Plaintiffs to Defendants of such failure, Defendants have failed to effectuate any repair to the manufactured home. As such, the Walters' home continues to deteriorate structurally.

36.    Defendants have failed to honor the warranty or repair in that the manufactured home purchased was not fit for its intended use, was not merchantable at the date of the purchase and has continued to not be fit for its particular purpose, not withstanding efforts to repair the structure by Defendants.

37.    Pursuant to <u>Code of Alabama</u>, 1975 § 7-2-607(3), Mr. Driskell has given the Defendants notice of his warranty claims prior to bringing this suit.

**C.    Specific and Representative Allegations Regarding Chester Driskell**

38.    Defendants manufactured a manufactured home, which Mr. Driskell purchased on or about April 2003. The purchase price of the home was $60,000.

39.    Defendants made a written express warranty to Mr. Driskell that was identical or substantially the same as that provided to other Plaintiffs and the Class. Defendants further

warranted that any defects in the materials or workmanship in the home would be repaired or remedied at no cost to the Plaintiff.

40.     The manufactured home manufactured by Defendant Palm Harbor Homes failed to perform, failed to serve as a suitable place or residence, and failed in its intended purpose.

41.     Subsequent to the failure of the manufactured home and notice by the Plaintiff to Defendants of such failure, Defendants have failed to effectuate any repair to the manufactured home. As such, the manufactured home continues to deteriorate structurally.

42.     Defendants have failed to honor the warranty or repair in that the manufactured home purchased was not fit for its intended use, was not merchantable at the date of the purchase and has continued to not be fit for its particular purpose, not withstanding efforts to repair the structure by Defendants.

43.     Pursuant to <u>Code of Alabama,</u> 1975 § 7-2-607(3), Mr. Driskell has given the Defendants notice of his warranty claims prior to bringing this suit.

## IV.    CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this action as a class action as representatives of the following proposed, initially defined Class:

All persons for whom each of the following is true:

1) the person purchased a manufactured home that was manufactured by Defendants;

(2) the manufactured home was placed for residence in any of the following counties in Alabama: Baldwin, Barbour, Bullock, Bulter, Chootaw, Clarke, Coffee, Conecuh, Covington, Crenshaw, Dale, Escambia, Geneva, Henry, Houston, Lowndes, Marengo, Mobile, Monroe, Montgomery, Pike, Washington, Wilcox.;

(3) the walls of the manufactured homes are constructed such that the vinyl vapor retarder is placed on the "living side" of the exterior walls with the wall cavities ventilated to outside air; and

(4) the Homeowners' Guide and Limited Warranty provided to the persons by Defendants in connection with the purchase required

- 11 -

arbitration of any claims but did not purport to ban class actions in
that arbitration.

45.    The initially proposed Class does not include any Defendant or any person, firm
trust, corporation or other entity affiliated with any Defendant;

46.    The members of the Class are so numerous that joinder of all their members
would be impractical.  On information and belief, Defendants have sold hundreds or thousands
of manufactured homes within the twenty-three counties encompassed by the proposed Class.

47.    There are questions of law and fact common to the Class that predominate over
questions affecting only individual members, including, but not limited to:

    (a)    Whether Defendants manufactured homes that were by design
improper for sale and use within the Gulf Coast Region;

    (b)    Whether Defendants knew that their manufactured homes were by
design improper for sale and use with the Gulf Coast Region;

    (c)    Whether Defendants failed to notify consumers of the defects in their
manufactured homes;

    (d)    Whether Defendants have breached express and implied warranties
with regard to Plaintiffs and the Class;

    (e)    Whether Defendants have engaged and are engaging in unfair or
deceptive acts and practices in connection with a consumer
transaction as alleged herein;

    (f)    Whether Defendants have engaged or are engaging in
unconscionable acts and practices in connection with a consumer
transaction as alleged herein;

    (g)    Whether Plaintiffs and the members of the Class have suffered
damages as a result of the conduct alleged herein, and if so, the
measure of such damage,

48.    Plaintiffs' claims and defenses are typical of the claims and defenses belonging to
absent members of the Class, because Defendants have uniformly and improperly manufactured
homes placed for residence in the twenty-three counties encompassed by the proposed class.

- 12 -

49.     Plaintiffs will fairly and adequately assert and protect the interests of absent members of the Class, because Plaintiffs have retained counsel competent and experienced in complex class action litigation and have no interest adverse to any absent Class members.

50.     Class certification is proper because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for Defendants.

51.     Class certification is proper because the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.

52.     Class certification is also proper because Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the Class.

53.     Class certification is also proper because common issues of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT ONE

**MAGNUSON MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

54.     Plaintiffs incorporate by reference all of the preceding paragraphs.

55.     At the time of the manufacture, Defendants were merchants and Defendants expressly and/or impliedly warranted to all Plaintiffs and Class members that the manufactured homes purchased by Plaintiffs and the Class would be merchantable, fit for the ordinary purposes

for which it was to be used, and habitable. Defendants furthermore expressly warranted that the manufactured homes were free from defects in materials and workmanship, and that any defects would be repaired or replaced free of charge under the warranty.

56.    The manufactured homes, as delivered, were not free from defects in materials or workmanship. The manufactured homes, as delivered, furthermore were not merchantable, were not fit for the ordinary purposes for which they would be used, and were not habitable.

57.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

58.    Defendants have failed or refused to correct the defects in Plaintiffs' manufactured home and/or the warranty has failed in its essential purpose causing Plaintiffs to suffer injury and damages.

59.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

60.    Plaintiffs provided notice to Defendants of the defect and the breach of the warranty and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

61.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the express and implied warranties at the time of the sale.

62.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been proximately damaged as follows: the defects in the manufactured home have substantially and severely impaired its use; the home is of decreased or lesser value than represented when purchased; Plaintiffs have suffered mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience; and Plaintiffs have been subject to toxic mold resulting from the defects.

## COUNT TWO

### BREACH OF EXPRESS WARRANTY
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

63.    Plaintiffs incorporate by reference all of the preceding paragraphs.

64.    Defendants expressly warranted to all Plaintiffs and Class members that the manufactured homes sold to Plaintiffs and the Class were free from defects in materials and workmanship and that any defects would be repaired or replaced under the warranty.

65.    The manufactured homes, as delivered, were not free from defects in materials or workmanship.

66.    Defendants have failed or refused to correct the defects in the manufactured homes and/or the warranty has failed in its essential purpose causing Plaintiffs and the Class to suffer injury and damages.

67.    Plaintiffs provided notice to Defendants of the defect and the breach of the warranty and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

68.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

69.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

70.    Plaintiffs and the Class have been injured and damaged as a direct and proximate result of Defendants' wrongful conduct.

### COUNT THREE

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

71.    Plaintiffs incorporate by reference all of the preceding paragraphs.

72.    Defendants breached the implied warranty of merchantability given to all Plaintiffs and Class members in that the manufactured homes that they provided to Plaintiffs and the Class were not merchantable, not fit for ordinary purposes, and not built as represented or ordered.

73.    Plaintiffs provided notice to Defendants of the defect and the breach of the warranty and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

74.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

75.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

76.    When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

77.    Plaintiffs and the Class have been injured and damaged by Defendants' breach of the implied warranty of merchantability.

### COUNT FOUR

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

78.    Plaintiffs incorporate by reference all of the preceding paragraphs.

79.     Defendants breached the implied warranty of fitness for a particular purpose given to all Plaintiffs and Class members in that the manufactured homes purchased by Plaintiffs and the Class were not merchantable, not fit for ordinary purposes, and not built as represented or ordered.

80.     Plaintiffs have provided notice to Defendants of the defect and the breach of the implied warranty of fitness for a particular purpose and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

81.     Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

82.     Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

83.     When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

84.     Plaintiffs and the Class have been damaged as a direct result of Defendants' breach of fitness for particular purpose by Defendants.

## COUNT FIVE

### BREACH OF IMPLIED WARRANTY OF HABITABILITY
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

85.     Plaintiffs incorporate by reference all of the preceding paragraphs.

86.     Defendants breached the implied warranty of habitability given to all Plaintiffs and Class members in that the manufactured homes purchased by Plaintiffs and the Class were not merchantable, not fit for ordinary purposes, and defective in such a manner that the homes do not meet ordinary, normal standards reasonably to be expected of living quarters.

- 17 -

87.    Plaintiffs provided notice to Defendants for the breach of the implied warranty of habitability and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

88.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

89.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

90.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

91.    When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

92.    Plaintiffs and the Class were damaged as a direct result of Defendants' breach of warranty of habitability by Defendants.

## COUNT SIX

### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

93.    Plaintiffs incorporate by reference all of the preceding paragraphs.

94.    Defendants negligently manufactured, designed, built, and/or assembled the manufactured homes which the Plaintiffs and the members of the Class purchased.

95.    Defendants owed a duty to use due and ordinary care in the manufacture, design, building, and/or assembly of the manufactured homes purchased by the Plaintiffs and the Class.

- 18 -

96.     Defendants breached the duty owed to the Plaintiffs and the Class by failing to use ordinary and due care in the manufacture, design, building, and/or assembly of the manufactured home which was purchased by the Plaintiffs.

97.     When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

98.     The presence of the defect was negligently concealed by the Defendants. This concealment was material to the transaction because no consumer in the Gulf Coast Region would purchase a manufactured home if told that the home was defective for sale in the Gulf Coast Region.

99.     Plaintiffs and the Class were damaged by the failure of the  premises meet ordinary, normal standards reasonably to be expected of living quarters as a direct and proximate result of the Defendants' negligence.

## COUNT SEVEN

### WANTON CONSTRUCTION
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

100.     Plaintiffs incorporate by reference all of the preceding paragraphs.

101.     Defendants wantonly constructed the manufactured homes purchased by Plaintiffs and the Class.

102.     The workmanship and design are inferior, wantonly performed or done, leaving the manufactured home in a defective condition, thereby causing injury to the Plaintiffs.

103.     Plaintiffs and the Class have been damaged as a direct and proximate result of the Defendants' wantonness.

## COUNT EIGHT

### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

104.     Plaintiffs incorporate by reference all of the preceding paragraphs.

- 19 -

105.    Defendants, by acts and omissions described herein, have wrongfully appropriated, retained or otherwise possessed funds that rightfully in justice and equity belong to Plaintiffs and the Class. Defendants have earned enormous profits from this deceptive act.

106.    Defendants should be required to disgorge all sums (e.g. the money earned from this practice) received from Plaintiffs and the Class as a result of the illegal and improper manner in which they placed for use by consumers a product (the homes) into a region in which they knew the home were or would become worthless. Plaintiffs are also entitled to pre-judgment interest.

**COUNT NINE**

**FRAUDULENT CONCEALMENT AND SUPPRESSION
(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

107.    Plaintiffs incorporate by reference all of the preceding paragraphs.

108.    Defendants failed to disclose the known defect (as set forth above) of the manufactured homes to Plaintiffs and the Class in connection with the purchasing of the manufactured home.

109.    The fraudulent concealment and omissions by Defendants were known and deliberate and were purposely designed to deceive Plaintiffs and the Class.

110.    The concealment and omissions by Defendants were material in that Plaintiffs would not have purchased the manufactured home absent the concealment and omissions of material facts by Defendants. Plaintiffs and the Class reasonably believed that Defendants had accurately and adequately disclosed all material facts.

111.    Defendants had a duty to disclose the defect to Plaintiffs and the Class members. Defendants were in a superior position of knowledge and sophistication and knew that Plaintiffs and the Class members were unaware of the defect at the time Plaintiffs and the Class members purchased their homes.

112.    Plaintiffs and the Class were damaged as a direct and proximate result of Defendants' fraudulent concealment and omissions.

- 20 -

113.    Defendants' fraudulent conduct was willful, wanton, and malicious, thereby entitling Plaintiffs and the Class members within Alabama to the recover an amount to be determined at the trial of this action.

114.    Plaintiffs and the Class members discovered the fraudulent concealment within two (2) years of filing this lawsuit.

115.    Defendants entered into a pattern or practice of fraudulent conduct that included the fraud practiced on Plaintiffs and the Class members.

116.    Plaintiffs and the Class members relied on and were induced to act by Defendants' misrepresentations and concealment. The reliance of Plaintiffs and the Class members can be inferred from the fact that the Plaintiffs and the Class purchased the homes and would not have done so if they had been told of the defect in their homes.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, prays for relief in the form of an order as follows:

a)    Certifying the class and appointing Plaintiffs and their counsel to represent the class;

b)    Ordering defendant to provide immediate notice to the Class of the defect in the walls of their homes;

c)    Ordering defendant to promptly repair and/or replace all manufactured homes purchased by Plaintiffs and the Class;

d)    Awarding damages and, where appropriate, punitive damages;

e)    Awarding plaintiff and the members of the class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert-witness fees and other costs;

f)    Order any and all appropriate injunctive, declaratory, and equitable relief, including but not limited to the imposition of a constructive trust or the

entry of a preliminary and/or permanent injunction ordering Defendants to cease all sales of defective manufactured homes in the Gulf Coast Region; and

g) Awarding such other and further relief as may be just and proper.

h) Plaintiffs do not seek, on their behalf, or on behalf of any Class members, recovery for actual personal injuries.

Dated: December 22, 2006

/s/ C. Gibson Vance
JERE L. BEASLEY (BEA020)
W. DANIEL MILES, III (MIL060)
C. GIBSON VANCE (VAN025)
Attorneys for Plaintiffs

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343
(334) 954-7555 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon all parties listed below by placing a copy of same in the United States Mail, first class, postage prepaid on this the 22nd day of December, 2006.

Winston C. Edwards
David C. Hilyer
Craddock, Reneker & Davis, LLP
4142 Carmichael Road, Suite C
Montgomery, Alabama 36106

/s/ C. Gibson Vance
OF COUNSEL

- 22 -

ustomer #: 2432

Palm Harbor Homes # 637
1900 Columbus Parkway, Opelika, AL 36801
(334) 749-2229    (334) 745-2292

6/10/2004 3:23:5

## ARBITRATION PROVISION

The parties to the Retail Installment Contract or Cash Sale Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or Cash Sale Contract or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair or sale/disposition of the home which is the subject of the Retail Installment Contract or Cash Sale Contract, whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of binding arbitration before the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA and applicable state law. Judgment on the arbitration award may be entered in any court having jurisdiction.

> The parties agree that this Arbitration Provision is being executed subsequent to the Retail Installment Contract or cash sale agreement and amends and modifies same. As such, it is the express intent of the parties that this Arbitration Provision be binding and enforceable and not affected by any merger clause contained in any other documents executed in conjunction with the purchase of the subject home.

Nothing in this Arbitration Provision prevents any party or beneficiary from seeking a consumer inspection from any federal or state licensing or regulatory agency or relieves anyone from any duty to comply with any order or directive of any applicable state department or agency.

The parties agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, the manufacturer of the home which is the subject of the Retail Installment Contract or Cash Sale Contract as well as the manufacturer's and retailer's employees, officers, directors, agents, parent companies or affiliated companies as fully as if the manufacturer was a signatory to the Retail Installment Contract or Cash Sale Contract.

The parties agree that any contests to the validity or enforceability of this Arbitration Provision, or any other part of the Retail Installment Contract or Cash Sale Contract or related documentation, will be determined by arbitration in accordance with the terms of this Arbitration Provision. The parties further agree that in the event a dispute arises as to whether any claim, dispute or controversy is subject to this Arbitration Provision, that issue shall be decided by arbitration in the same manner and with the same effect as all other controversies subject to this Arbitration Provision.

The parties understand they have the right to have any disputes between them decided in court, but they choose instead to have any such disputes decided by arbitration. The parties further understand that by agreeing to arbitrate, they knowingly and voluntarily waive any right they have to a jury trial and other rights afforded by the judicial process.

The parties agree that any arbitration proceedings commenced in accordance with this Arbitration Provision will be held in _____ Lee _____ County, _____ AL _____.

Kenneth D Moore
_____          _____
Buyer                                Buyer

10-18-4
_____          _____
Date                                 Date

Palm Harbor Homes
10-18-4
_____
Date

contract totally supersedes and replaces the contract of the parties dated: _____

document-edited-.xfml   Last Revised On: 5/3/2004 1:48:00 PM          Page 5 of 5

Copyright © 2003 Palm Harbor Homes, Inc. All Rights Reserved 0009

For Alabama New Chattel Package

**ARBITRATION**

| | |
|---|---|
| MICHAEL WALTERS AND JENNIFER WALTERS, CHESTER DRISKELL on behalf of themselves and a class of similarly situated individuals | No. 11-421-002782-06 |
| Plaintiffs, | |
| v. | |
| PALM HARBOR HOMES, INC. | |
| Defendants. | |

Plaintiffs allege upon personal knowledge as to their own acts, and upon information and belief (based on the investigation of counsel) as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, on behalf of themselves and a class of similarly situated individuals, as follows.

## I.   NATURE OF THE ACTION

1.   This litigation is brought by and on behalf of thousands of homeowners who unwittingly purchased manufactured homes built by Defendants that were fundamentally defective for the jurisdictions in which they lived.   The walls of their homes are literally rotting away as a result of a pervasive defect in their construction that Defendants have known about but failed to correct.

2.   Defendants have known for years that their primary method of constructing the walls of their manufactured homes was defective when those homes were sold for placement in the humid climates of Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, Texas, and Louisiana.   Specifically, Defendants have known that in the climates that predominate in those states, the location of the vapor barrier (or "vapor retarder") in the majority of Defendants' manufactured homes allows

EXHIBIT
C
tabbies®

moisture to accumulate and remain in the walls of those homes, thereby creating a situation in which the walls deteriorate and become host to destructive and dangerous molds and fungi.

3.    Defendants knew of this problem, knew how to fix it, and had viable methods available to them for fixing it, yet they continued to promote and sell defective manufactured homes throughout the states in the Gulf Coast region, knowing that the deterioration of these homes was inevitable.    However, despite this knowledge, Defendants never disclosed the problem to the homeowners.

4.    Plaintiffs, and homeowners like them, now own or are heavily mortgaged into worthless homes that are crumbling around them.

## II.    PARTIES

5.    Plaintiffs Michael Walters and Jennifer Walters are over the age of nineteen (19) and are residents of Pike County, Alabama.  They are collectively referred to in this Complaint as the Walters.

6.    Plaintiff Chester Driskell is over the age of nineteen (19) and is a resident of Pike County, Alabama.

7.    Defendant Palm Harbor Homes, Inc. ("Palm Harbor Homes") upon information and belief is a Texas corporation, who does business by agent in Alabama.

## III.    BACKGROUND FACTS

### A.    General Allegations

8.    The Federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401, *et. seq.*, went into effect on June 15, 1976, and is commonly referred to as the "HUD Code."  In addition, there exists the Manufactured Home Construction and Safety Standards, 24 C.F.R. § 3280, *et. seq.*, (the "Standards") and the Manufactured

2

Home Procedural and Enforcement Regulations, 24 C.F.R. § 3282, *et. seq.*, (the "Regulations.")

9.    The Standards mandate that "[a]ll construction methods shall be in conformance with accepted engineering practices to insure durable, livable and safe housing and shall demonstrate acceptable workmanship reflecting journeyman quality of work of the various trades." 24 C.F.R 3280.303(b).

10.    Defendants have known since at least the early 1990s that homes that it has manufactured and sold in the states of Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, Texas, and Louisiana are defectively designed for that region.

11.    The mobile homes designed and manufactured by Defendants and purchased by Plaintiffs and the Class have a defective design and construction of exterior walls in violation of the HUD Manufactured Home Construction and Safety Standards. Specifically, the defective mobile homes use a design that incorporates vapor barriers on the "living side" of the wall structures and exterior wall cavities that are ventilated to the outside air for use in a Gulf Coast region state that is subject to hot and humid climactic conditions.  The vapor barrier on the "living side" of the wall structure is vinyl-coated gypsum wallboard (sheetrock) with a permeability rating of not greater than 1 perm.  This design and manufacture aspect does not comply with accepted engineering practices to insure durable, livable, and safe housing as set forth in HUD standards Title 24 of the Code of Federal Regulations § 3280.303(b).  This defective design and construction of the exterior walls of homes for use in the Gulf Coast region has led to or will lead to excessive accumulation of vapor condensation and a contiguous moisture problem throughout the exterior wall structures of the mobile homes utilizing this design and material in manufacture.  The excessive moisture accumulation within the walls has led or will lead to premature deterioration of wall materials, warping or weakening of wall materials, development of "soft walls", and to the growth of molds and/or fungi that are potentially harmful to the occupants.  Because this predictable phenomenon and

3

resulting damage occurs in the Gulf Coast states, people working in the manufactured housing industry commonly refer to this condition as "Gulf Coast Syndrome."

12.     Contrary to the mandate to build homes using "acceptable engineering practices to insure durable, livable and safe housing," the placement of a vapor barrier on the living side of the homes in the regions described herein is contrary to acceptable and fundamental engineering practices.

13.     The manufactured homes designed and manufactured by Defendants, including the manufactured homes purchased by Plaintiffs and the Class, have an improper design and construction of the walls in violation of the Department of Housing and Urban Development's ("HUD's") Manufactured Home Construction and Safety Standards.  The defect existed at the time of sale and Plaintiffs and the proposed Class were provided with a written manufacturer warranty that expressly warranted that the home was free from defect.

14.     Under applicable regulations, it is the responsibility of the manufacturer to choose from one of several options for the construction of a home, taking into consideration, among other things, the geographic location in which the home will be placed.  To that end, the HUD Code has provided two options for home construction under 24 C.F.R. § 3280.504(b) which have never required the placement of a vapor retarder on the living side of the home.  In addition, the HUD Code provides for any innovations and/or alternatives in construction for "new designs or techniques not in compliance with the Standards ... in cases ... [w]here such construction would provide performance that is equivalent or superior to that required by the Standards; and ... where compliance with the Standards would be unreasonable because of the circumstances of the particular case."

15.     Despite the fact that the HUD Code, the Standards, and the Regulations have never required the use of a vapor barrier on the living side of the walls in these regions, on or about March 30, 2000, the Director, Manufactured Housing and Standards

4

Division, Office of Consumer and Regulatory Affairs, Room 9156, Department of Housing and Urban Development (hereinafter, "HUD" or "the Department") published a proposed waiver to 24 C.F.R. 3280.504 of the Manufactured Home Construction and Safety Standards (hereinafter, "the Standards") on March 30, 2000 (65 Fed. Reg. 17110). This proposed waiver applied to the first of the options in 24 USC 3280.504(b) (the only option requiring the vapor barrier /retarder be on the living side of the walls) and allowed the vapor barrier / retarder to be moved from the living side walls of the home to the outside of the home. Thus, four express options were available to the manufacturer before the "proposed waiver" was implemented in March 2000. The waiver now creates yet another option from which the manufacturer may choose to meet "their responsibilities to use construction methods that result in 'durable, livable, and safe housing' as required by 24 CFR 3280.303(b) of the Standards."

16.    The proposed waiver was issued in response to information received from manufacturers and certain State Administrative Agencies ("SAAs") in southeastern States concerning the continuing increases in the number and severity of consumer complaints caused primarily by moisture build-up and condensation in homes located in the south. At that time, § 3280.504 of the Standards did not distinguish among climates for requirements for condensation control and installation of vapor barriers. Thus, for example, the Standards did not separately address homes placed in humid and fringe environments or climates, which are predominantly located in the southeastern part of the United States. In these climates, it was determined that it may be beneficial to prevent the outside, moisture-laden air from entering through the warm (exterior) side of the home's exterior wall and condensing and collecting on the cold (living space or interior) side of the wall assembly. One means of preventing moisture from entering the exterior wall cavity from the outside would be to install a vapor retarder on the warm or exterior side of the wall instead of on the interior or living space side of the exterior wall.

17.    The interior surface of the exterior wall should also be constructed of a permeable material. This would permit any moisture-laden air that may have entered the wall cavity through a discontinuity in the exterior vapor retarder to be dissipated through the interior permeable material. In such cases, use of vapor retarder paints, vinyl-covered gypsum wallboard, or other impermeable materials or finishes on the interior side of exterior walls could be detrimental, because they would trap moisture within the wall.

18.    HUD in fact issued a waiver that applied to the first of the alternatives available under § 3280.504(b), the then current condensation control and vapor barrier installation requirements for exterior walls in humid and fringe climates. Specifically, this waiver allowed manufacturers of homes for humid and fringe climates to install the vapor retarder on the exterior side, rather than the interior or living space side, of the exterior wall, provided: (1) The exterior side of the exterior wall is constructed with a vapor retarder or exterior covering and sheathing that has a permeance not greater than 1.0 perm; and (2) the interior finish and interior wall panels are designed with a 5 perm or higher rating. The waiver also required manufacturers to add a statement and a map to the data plate indicating that the home is only suitable for installation in humid and fringe climates (the map designated the acceptable locations for which the waiver is applicable).

19.    The waiver that was urged by many manufacturers in the industry and approved by HUD stated:

> **§ 3280.504 Condensation control and installation of vapor retarders:**
>
> \*\*\*
>
> (4) Homes manufactured to be sited in "humid climates" or "fringe climates" as shown on the Humid and Fringe Climate Map in this paragraph shall be permitted to have a vapor retarder specified in paragraph (b)(1) of this section installed on the exterior side of the wall insulation or be constructed with an external covering and sheathing with a combined permeance of not greater than 1.0 perm, provided the interior finish and interior wall panel materials have a combined permeance of not less than 5.0 perm.

20.    The Humid and Fringe Climate Map stated that "following areas of local governments (counties or similar areas, unless otherwise specified), listed by State are deemed to be within the humid and fringe climate areas shown on the Humid and Fringe Climate Map in paragraph (b)(4) of this section, and the vapor retarder specified in paragraph (b)(4) of this section may be applied to homes built to be sited within these jurisdictions":

**Alabama:** Baldwin, Barbour, Bullock, Bulter, Chootaw, Clarke, Coffee, Conecuh, Covington, Crenshaw, Dale, Escambia, Geneva, Henry, Houston, Lowndes, Marengo, Mobile, Monroe, Montgomery, Pike, Washington, Wilcox.

**Florida:** All counties and locations within the State of Florida.

**Georgia:** Appling, Atkinson, Bacon, Baker, Ben Hill, Berrien, Brantley, Brooks, Bryan, Calhoun, Camden, Charlton, Chatham, Clay, Clinch, Coffee, Colquitt, Cook, Crisp, Decatur, Dougherty, Early, Echols, Effingham, Evans, Glynn, Wayne, Grady, Irwin, Jeff Davis, Lanier, Lee, Liberty, Long, Lowndes, McIntosh, Miller, Mitchell, Pierce, Quitman, Randolph, Seminole, Tattnall, Terrell, Thomas, Tift, Turner, Ware, Worth.

**Louisiana:** All counties and locations within the State of Louisiana.

**Mississippi:**
Adams, Amite, Clairbourne, Clarke, Copiah, Covington, Forrest, Franklin, George, Greene, Hancock, Harrison, Hinds, Issaquena, Jackson, Jasper, Jefferson, Jefferson Davis, Jones, Lamar, Lawrence, Lincoln, Pearl River, Perry, Pike, Rankin, Simpson, Smith, Stone, Walthall, Warren, Wayne, Wilkinson.

**North Carolina:**    Brunswick, Carteret, Columbus, New Hanover, Onslow, Pender.

**South Carolina:**
Jasper, Beaufort, Colleton, Dorchester, Charleston, Berkeley, Georgetown, Horry.

**Texas** Anderson, Angelina, Aransas, Atacosa, Austin, Bastrop, Bee, Bexar, Brazoria, Brazos, Brooks, Burleson, Caldwell, Calhoun, Cameron, Camp, Cass, Chambers, Cherokee, Colorado, Comal, De Witt, Dimmit, Duval, Falls, Fayette, Fort Bend, Franklin, Freestone, Frio, Gavelston, Goliad, Gonzales, Gregg, Grimes, Guadalupe, Hardin, Harris, Harrison, Hays, Henderson, Hidalgo, Hopkins, Houston, Jackson, Jasper, Jefferson, Jim Hogg, Jim Wells, Karnes, Kaufman, Kennedy, Kinney, Kleberg, La Salle, Lavaca, Lee, Leon, Liberty, Limestone, Live Oak, Madison, Marion, Matagorda, Maverick, McMullen, Medina, Milam, Montgomery, Morris, Nacogdoches, Navarro, Newton, Nueces, Orange, Panola, Polk, Rains, Refugion, Robertson, Rusk, Sabine, San Augustine, San Jacinto, San Patricio, Shelby, Smith, Starr, Titus, Travis, Trinity, Tyler, Upshur, Uvalde, Val Verde, Van Zandt, Victoria, Walker, Waller, Washington, Webb, Wharton, Willacy, Williamson, Wilson, Wood, Zapata, Zavala.

These respective Counties shall hereinafter be referred to as the "Gulf Coast Region."

21.    As the acting Director of Product Engineering for Fleetwood Homes stated in commenting to HUD on the proposed waiver:

> [t]o be able to put the vapor barrier on the exterior side (warm side) of the wall in hot, humid climates is very necessary to properly handle potential moisture problems... [w]ithout these exceptions the vapor barrier will remain on the inside in the hot, humid climate and moisture will be trapped in the home."

(Comments by William Farish, P.E. in a letter dated January 17, 2005, to the HUD).

22.    Despite lobbying for and obtaining the waiver, Defendants failed to take advantage of the waiver HUD agreed was required. Defendants disingenuously allege that it is impracticable to comply with the waiver. Again, as alleged, even prior to the waiver, there were other options available which did not require a vapor retarder on the living side of the walls, and an unlimited alternative construction provision that allowed manufacturers to meet the federal mandate of safe and durable housing through innovative construction designs and methods. Upon information and belief, Defendants chose to ignore these other options because the location of a vapor retarder on the living side of the walls was beneficial in the majority of the locations in which Defendants sold their homes, and changing the design for a minority of homebuyers would impact Defendants' profits. The result was that Defendants sold a product in the Gulf Coast Region that is defective for that geographic region. Regardless, Defendants chose to sell homes to consumers in the Gulf Coast Region without informing them of this known defect and thus chose profit over conscience.

23.    Any and all complaints to Defendants have resulted in inadequate relief. Despite a reasonable opportunity to correct its wrongs, including repeated complaints by countless individuals, Defendants have only occasionally offered to replace a particular home's gypsum wallboard. This does not remedy the cause of the problem as the new gypsum wallboard deteriorates in the same manner as the replaced gypsum wallboard.

Defendants never inform the consumers of the known defect and fail to offer a full refund of the purchase price.

24.    Defendants made a written express warranty to the Plaintiffs and the members of the proposed Class.  Defendants further warranted that any defects in the materials or workmanship in the home, which they were given notice of within the warranty period, would be repaired or remedied at no cost to the Plaintiffs.

25.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class have been proximately damaged as follows:  the defects in the manufactured homes have substantially and severely impaired their use; the homes are of decreased or lesser value than represented when purchased; Plaintiffs and the Class have suffered mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience; and Plaintiffs and the Class have been subject to toxic mold resulting from the defects.

26.    At all times material hereto, Plaintiffs and the Class depended on Defendants to advise them as to quality and design of the manufactured home.  Defendants had superior knowledge and bargaining power over Plaintiffs and the Class.

27.    The conduct by Defendants was intentional, gross, wanton, malicious and/or oppressive.

28.    The manufactured homes that Defendants sold to Plaintiffs and the Class were dangerous products when they were manufactured and provided for sale in the Gulf Coast Region.  As Defendants knew, the homes created a substantial risk of excessive moisture and therefore created an extreme risk of mold growth and structural damage.  This in turn created an unreasonable and serious risk of personal injury or death to Plaintiffs, Class members, other residents of the homes, and visitors to those homes.

29.    Defendants warranted to all Plaintiffs and Class members that the manufactured homes were free from defects in materials and/or workmanship, and Plaintiffs and the Class had a reasonable expectation that each manufactured home would

have proper construction appropriate for the region in which the manufactured homes were sold. Defendants also promised expressly or as a matter of law impliedly to comply with all applicable building codes, including the HUD Code, Standards, and Regulations.

30.    The presence of the defect, which was negligently or fraudulently concealed by by the Defendants, was material to the transaction because no consumer in the Gulf Coast Region would purchase a manufactured home if told that the manufactured home was defective for use with the Gulf Coast Region.

**B.    Specific and Representative Allegations Regarding the Walters**

31.    Defendants manufactured a manufactured home, which the Walters purchased on or about June 3, 2003. The purchase price of the home was $53,227.50.

32.    Defendants made a written express warranty to the Walters that was identical or substantially the same as that provided to other Plaintiffs and the Class. Defendants further warranted that any defects in the materials or workmanship in the home, which they were given notice of within the warranty period, would be repaired or remedied at no cost to the Walters.

33.    The manufactured home manufactured by Defendant Palm Harbor Homes failed to perform, failed to serve as a suitable place of residence, and failed in its intended purpose.

34.    Subsequent to the failure of the manufactured home and notice by the Plaintiffs to Defendants of such failure, Defendants have failed to effectuate any repair to the manufactured home. As such, the Walters' home continues to deteriorate structurally.

35.    Defendants have failed to honor the warranty or repair in that the manufactured home purchased was not fit for its intended use, was not merchantable at

the date of the purchase and has continued to not be fit for its particular purpose, not withstanding efforts to repair the structure by Defendants.

36.    Pursuant to Code of Alabama, 1975 § 7-2-607(3), Mr. Driskell has given the Defendants notice of his warranty claims prior to bringing this suit.

**C.    Specific and Representative Allegations Regarding Chester Driskell**

37.    Defendants manufactured a manufactured home, which Mr. Driskell purchased on or about April 2003. The purchase price of the home was $60,000.

38.    Defendants made a written express warranty to Mr. Driskell that was identical or substantially the same as that provided to other Plaintiffs and the Class. Defendants further warranted that any defects in the materials or workmanship in the home would be repaired or remedied at no cost to the Plaintiff.

39.    The manufactured home manufactured by Defendant Palm Harbor Homes failed to perform, failed to serve as a suitable place or residence, and failed in its intended purpose.

40.    Subsequent to the failure of the manufactured home and notice by the Plaintiff to Defendants of such failure, Defendants have failed to effectuate any repair to the manufactured home.  As such, the manufactured home continues to deteriorate structurally.

41.    Defendants have failed to honor the warranty or repair in that the manufactured home purchased was not fit for its intended use, was not merchantable at the date of the purchase and has continued to not be fit for its particular purpose, not withstanding efforts to repair the structure by Defendants.

42.    Pursuant to Code of Alabama, 1975 § 7-2-607(3), Mr. Driskell has given the Defendants notice of his warranty claims prior to bringing this suit.

11

## IV.    CLASS ACTION ALLEGATIONS

43.    Plaintiffs bring this action as a class action as representatives of the following proposed, initially defined Class:

> All persons for whom each of the following is true:
>
> 1) the person purchased a manufactured home that was manufactured by Defendants;
>
> (2) the manufactured home was placed for residence in any of the following counties in Alabama: Baldwin, Barbour, Bullock, Bulter, Chootaw, Clarke, Coffee, Conecuh, Covington, Crenshaw, Dale, Escambia, Geneva, Henry, Houston, Lowndes, Marengo, Mobile, Monroe, Montgomery, Pike, Washington, Wilcox.;
>
> (3) the walls of the manufactured homes are constructed such that the vinyl vapor retarder is placed on the "living side" of the exterior walls with the wall cavities ventilated to outside air; and
>
> (4) the Homeowners' Guide and Limited Warranty provided to the persons by Defendants in connection with the purchase required arbitration of any claims but did not purport to ban class actions in that arbitration.

44.    The initially proposed Class does not include any Defendant or any person, firm trust, corporation or other entity affiliated with any Defendant;

45.    The members of the Class are so numerous that joinder of all their members would be impractical.  On information and belief, Defendants have sold hundreds or thousands of manufactured homes within the twenty-three counties encompassed by the proposed Class.

46.    There are questions of law and fact common to the Class that predominate over questions affecting only individual members, including, but not limited to:

> (a)    Whether Defendants manufactured homes that were by design improper for sale and use within the Gulf Coast Region;

12

(b)    Whether Defendants knew that their manufactured homes were by design improper for sale and use with the Gulf Coast Region;

(c)    Whether Defendants failed to notify consumers of the defects in their manufactured homes;

(d)    Whether Defendants have breached express and implied warranties with regard to Plaintiffs and the Class;

(e)    Whether Defendants have engaged and are engaging in unfair or deceptive acts and practices in connection with a consumer transaction as alleged herein;

(f)    Whether Defendants have engaged or are engaging in unconscionable acts and practices in connection with a consumer transaction as alleged herein;

(g)    Whether Plaintiffs and the members of the Class have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damage,

47.    Plaintiffs' claims and defenses are typical of the claims and defenses belonging to absent members of the Class, because Defendants have uniformly and improperly manufactured homes placed for residence in the twenty-three counties encompassed by the proposed class.

48.    Plaintiffs will fairly and adequately assert and protect the interests of absent members of the Class, because Plaintiffs have retained counsel competent and experienced in complex class action litigation and have no interest adverse to any absent Class members.

49.    Class certification is proper because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for Defendants.

50.    Class certification is proper because the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual

Class members which would, as a practical matter, be dispositive of the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.

51.    Class certification is also proper because Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the Class.

52.    Class certification is also proper because common issues of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT ONE**

**MAGNUSON MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

53.    Plaintiffs incorporate by reference all of the preceding paragraphs.

54.    At the time of the manufacture, Defendants were merchants and Defendants expressly and/or impliedly warranted to all Plaintiffs and Class members that the manufactured homes purchased by Plaintiffs and the Class would be merchantable, fit for the ordinary purposes for which it was to be used, and habitable. Defendants furthermore expressly warranted that the manufactured homes were free from defects in materials and workmanship, and that any defects would be repaired or replaced free of charge under the warranty.

55.    The manufactured homes, as delivered, were not free from defects in materials or workmanship. The manufactured homes, as delivered, furthermore were not merchantable, were not fit for the ordinary purposes for which they would be used, and were not habitable.

14

56.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

57.    Defendants have failed or refused to correct the defects in Plaintiffs' manufactured home and/or the warranty has failed in its essential purpose causing Plaintiffs to suffer injury and damages.

58.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

59.    Plaintiffs provided notice to Defendants of the defect and the breach of the warranty and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

60.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the express and implied warranties at the time of the sale.

61.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been proximately damaged as follows:  the defects in the manufactured home have substantially and severely impaired its use; the home is of decreased or lesser value than represented when purchased; Plaintiffs have suffered mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience; and Plaintiffs have been subject to toxic mold resulting from the defects.

## COUNT TWO

### BREACH OF EXPRESS WARRANTY
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

62.    Plaintiffs incorporate by reference all of the preceding paragraphs.

63.    Defendants expressly warranted to all Plaintiffs and Class members that the manufactured homes sold to Plaintiffs and the Class were free from defects in materials and workmanship and that any defects would be repaired or replaced under the warranty.

64.    The manufactured homes, as delivered, were not free from defects in materials or workmanship.

65.    Defendants have failed or refused to correct the defects in the manufactured homes and/or the warranty has failed in its essential purpose causing Plaintiffs and the Class to suffer injury and damages.

66.    Plaintiffs provided notice to Defendants of the defect and the breach of the warranty and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

67.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

68.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

69.    Plaintiffs and the Class have been injured and damaged as a direct and proximate result of Defendants' wrongful conduct.

16

## COUNT THREE

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

70.    Plaintiffs incorporate by reference all of the preceding paragraphs.

71.    Defendants breached the implied warranty of merchantability given to all Plaintiffs and Class members in that the manufactured homes that they provided to Plaintiffs and the Class were not merchantable, not fit for ordinary purposes, and not built as represented or ordered.

72.    Plaintiffs provided notice to Defendants of the defect and the breach of the warranty and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

73.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

74.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

75.    When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

76.    Plaintiffs and the Class have been injured and damaged by Defendants' breach of the implied warranty of merchantability.

## COUNT FOUR

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

77.    Plaintiffs incorporate by reference all of the preceding paragraphs.

78.    Defendants breached the implied warranty of fitness for a particular purpose given to all Plaintiffs and Class members in that the manufactured homes purchased by Plaintiffs and the Class were not merchantable, not fit for ordinary purposes, and not built as represented or ordered.

79.    Plaintiffs have provided notice to Defendants of the defect and the breach of the implied warranty of fitness for a particular purpose and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

80.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

81.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

82.    When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

83.    Plaintiffs and the Class have been damaged as a direct result of Defendants' breach of fitness for particular purpose by Defendants.

## COUNT FIVE

### BREACH OF IMPLIED WARRANTY OF HABITABILITY
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

84.    Plaintiffs incorporate by reference all of the preceding paragraphs.

85.    Defendants breached the implied warranty of habitability given to all Plaintiffs and Class members in that the manufactured homes purchased by Plaintiffs and the Class were not merchantable, not fit for ordinary purposes, and defective in such a manner that the homes do not meet ordinary, normal standards reasonably to be expected of living quarters.

86.    Plaintiffs provided notice to Defendants for the breach of the implied warranty of habitability and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

87.    Defendants have failed or refused to correct the defects in the Class members' homes despite being aware of the defects and having received voluminous complaints from Class members in the Gulf Coast Region concerning those defects.

88.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

89.    Defendants knew when they sold the homes that were purchased by Plaintiffs and the Class members that they were defective for use in the Gulf Coast Region and that they were therefore in violation of the warranty at the time of the sale.

90.    When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

91.    Plaintiffs and the Class were damaged as a direct result of Defendants' breach of warranty of habitability by Defendants.

## COUNT SIX

### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

92.     Plaintiffs incorporate by reference all of the preceding paragraphs.

93.     Defendants negligently manufactured, designed, built, and/or assembled the manufactured homes which the Plaintiffs and the members of the Class purchased.

94.     Defendants owed a duty to use due and ordinary care in the manufacture, design, building, and/or assembly of the manufactured homes purchased by the Plaintiffs and the Class.

95.     Defendants breached the duty owed to the Plaintiffs and the Class by failing to use ordinary and due care in the manufacture, design, building, and/or assembly of the manufactured home which was purchased by the Plaintiffs.

96.     When Defendants sold the homes that were purchased by Plaintiffs and Class members, those homes were dangerous products that created a risk of personal injury in the Gulf Coast Region.

97.     The presence of the defect was negligently concealed by the Defendants. This concealment was material to the transaction because no consumer in the Gulf Coast Region would purchase a manufactured home if told that the home was defective for sale in the Gulf Coast Region.

98.     Plaintiffs and the Class were damaged by the failure of the premises meet ordinary, normal standards reasonably to be expected of living quarters as a direct and proximate result of the Defendants' negligence.

## COUNT SEVEN

### WANTON CONSTRUCTION
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

99.     Plaintiffs incorporate by reference all of the preceding paragraphs.

100.    Defendants wantonly constructed the manufactured homes purchased by Plaintiffs and the Class.

101.    The workmanship and design are inferior, wantonly performed or done, leaving the manufactured home in a defective condition, thereby causing injury to the Plaintiffs.

102.    Plaintiffs and the Class have been damaged as a direct and proximate result of the Defendants' wantonness.

## COUNT EIGHT

### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

103.    Plaintiffs incorporate by reference all of the preceding paragraphs.

104.    Defendants, by acts and omissions described herein, have wrongfully appropriated, retained or otherwise possessed funds that rightfully in justice and equity belong to Plaintiffs and the Class.  Defendants have earned enormous profits from this deceptive act.

105.    Defendants should be required to disgorge all sums (e.g. the money earned from this practice) received from Plaintiffs and the Class as a result of the illegal and improper manner in which they placed for use by consumers a product (the homes) into a region in which they knew the home were or would become worthless.  Plaintiffs are also entitled to pre-judgment interest.

## COUNT NINE

### FRAUDULENT CONCEALMENT AND SUPPRESSION
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

106.    Plaintiffs incorporate by reference all of the preceding paragraphs.

107. Defendants failed to disclose the known defect (as set forth above) of the manufactured homes to Plaintiffs and the Class in connection with the purchasing of the manufactured home.

108. The fraudulent concealment and omissions by Defendants were known and deliberate and were purposely designed to deceive Plaintiffs and the Class.

109. The concealment and omissions by Defendants were material in that Plaintiffs would not have purchased the manufactured home absent the concealment and omissions of material facts by Defendants. Plaintiffs and the Class reasonably believed that Defendants had accurately and adequately disclosed all material facts.

110. Defendants had a duty to disclose the defect to Plaintiffs and the Class members. Defendants were in a superior position of knowledge and sophistication and knew that Plaintiffs and the Class members were unaware of the defect at the time Plaintiffs and the Class members purchased their homes.

111. Plaintiffs and the Class were damaged as a direct and proximate result of Defendants' fraudulent concealment and omissions.

112. Defendants' fraudulent conduct was willful, wanton, and malicious, thereby entitling Plaintiffs and the Class members within Alabama to the recover an amount to be determined at the trial of this action.

113. Plaintiffs and the Class members discovered the fraudulent concealment within two (2) years of filing this lawsuit.

114. Defendants entered into a pattern or practice of fraudulent conduct that included the fraud practiced on Plaintiffs and the Class members.

115. Plaintiffs and the Class members relied on and were induced to act by Defendants' misrepresentations and concealment. The reliance of Plaintiffs and the Class members can be inferred from the fact that the Plaintiffs and the Class purchased the homes and would not have done so if they had been told of the defect in their homes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, prays for relief in the form of an order as follows:

    a) Certifying the class and appointing Plaintiffs and their counsel to represent the class;

    b) Ordering defendant to provide immediate notice to the Class of the defect in the walls of their homes;

    c) Ordering defendant to promptly repair and/or replace all manufactured homes purchased by Plaintiffs and the Class;

    d) Awarding damages and, where appropriate, punitive damages;

    e) Awarding plaintiff and the members of the class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert-witness fees and other costs;

    f) Order any and all appropriate injunctive, declaratory, and equitable relief, including but not limited to the imposition of a constructive trust or the entry of a preliminary and/or permanent injunction ordering Defendants to cease all sales of defective manufactured homes in the Gulf Coast Region; and

    g) Awarding such other and further relief as may be just and proper.

    h) Plaintiffs do not seek, on their behalf, or on behalf of any Class members, recovery for actual personal injuries.

Dated: February 20, 2007

/s/ C. Gibson Vance
JERE L. BEASLEY (BEA020)
W. DANIEL MILES, III (MIL060)
C. GIBSON VANCE (VAN025)
Attorneys for Plaintiffs

23

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343
(334) 954-7555 (fax)

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that I have served a copy of the foregoing upon all parties listed below by placing a copy of same in the United States Mail, first class, postage prepaid on this the 20th day of February, 2007.

Winston C. Edwards
David C. Hilyer
Craddock, Reneker & Davis, LLP
4142 Carmichael Road, Suite C
Montgomery, Alabama 36106

                   /s/ C. Gibson Vance
                   OF COUNSEL

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004373
Cashier ID: khaynes
Transaction Date: 03/20/2008
Payer Name: BEASLEY ALLEN CROW METHVIN
----------------------------------
CIVIL FILING FEE
  For: BEASLEY ALLEN CROW METHVIN
  Case/Party: D-ALM-1-08-CV-000196-001
  Amount:        $350.00
----------------------------------
CHECK
  Check/Money Order Num: 186396
  Amt Tendered:  $350.00
----------------------------------
Total Due:        $350.00
Total Tendered: $350.00
Change Amt:       $0.00

PALM HARBOR HOMES V. WALTERS ET AL
```